UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>BRUNO RIOS-MONTANO,<br><br>　　　　　　　　　　Defendant. | Case No.: 19-CR-2123-GPC<br><br>**ORDER DENYING MOTION TO SUPPRESS FOR ALLEGED PCA VIOLATION.**<br><br>[ECF No. 32.] |

Pending before the Court is Defendant's motion to suppress evidence on the basis that such evidence was obtained in violation of the Posse Commitatus Act ("PCA"), 18 U.S.C. § 1385, because Defendant's arrest originated with a United States Marine observing the Defendant through a scope and then notifying federal law enforcement as to his whereabouts.

**I.　　Factual Background**

　　**a.　Arrest of Mr. Bruno Rios-Montano**

On April 11, 2019, at approximately 9:45 p.m., a United States Marine, who was deployed to the southern border of the United States to assist the United States Border Patrol in its law enforcement efforts, observed an individual near an area known as the

1

"65 Draw" using a scope. This area is located approximately 4 miles west of the San Ysidro, California, Port of Entry and approximately 30 yards north of the United States border with Mexico.

The Marine notified Border Patrol via "agency radio," and shortly thereafter Border Patrol Agent A. Arauz responded to the area. The U.S. Marine guided Agent Arauz to where the individual was observed. After a brief search, Agent Arauz encountered Defendant Rios-Montano trying to conceal himself in the brush.

Agent Arauz identified himself as a Border Patrol Agent and conducted an immigration inspection. Defendant stated that he is a citizen of Mexico and had entered the United States unlawfully. Agent Arauz advised Defendant of his *Miranda* rights and placed him under arrest. The next day, Defendant was charged with a violation of 8 U.S.C. § 1325.

**II. Analysis**

**a. The PCA Applies to the United States Marine Corps**.

As a threshold matter, the Court must determine if the PCA applies to the actions of the United States Marines. The PCA states that any person "willfully us[ing] any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined under this title or imprisoned not more than two years, or both." 18 U.S.C. § 1385. The Ninth Circuit has interpreted this statute to "eliminate the direct active use of Federal troops by civil law authorities," *United States v. Banks*, 539 F.2d 14, 16 (9th Cir.1976), and "prohibit[] Army and Air Force military personnel from participating in civilian law enforcement activities." *United States v. Chon*, 210 F.3d 990, 993 (9th Cir. 2000). If the facts demonstrate "widespread and repeated [PCA] violations" and "a need for the remedy" of suppression, the Court may invoke the exclusionary rule against the offending party to exclude evidence derived from the violative conduct. *United States v. Dreyer*, 804 F.3d 1266, 1279 (9th Cir. 2015) (citing *United States v. Roberts*, 779 F.2d

565, 568 (9th Cir. 1986)).

In 1981, Congress built on the long-standing tradition of the PCA by directing the Secretary of Defense to "prescribe such regulations as may be necessary to ensure that any activity . . . under this chapter does not include or permit direct participation by a member of the Army, Navy, Air Force, or Marine Corps in a search, seizure, arrest, or other similar activity unless participation in such activity by such member is otherwise authorized by law." 10 U.S.C. § 275. The Ninth Circuit has found that, "'[i]n consideration of this provision . . . [and] although the PCA does not directly reference the Navy or Marine Corps,' Congress prohibits 'Navy involvement in enforcing civilian laws.'" *United States v. Dreyer*, 804 F.3d 1266, 1272 (9th Cir. 2015) (quotation omitted); *Chon*, 210 F.3d at 993 ("Although the PCA does not directly reference the Navy or Marine Corps, we do not construe this omission as congressional approval for Navy involvement in enforcing civilian laws.") Pursuant to the Ninth Circuit's rulings in *Dreyer* and *Chon*, the Court rejects Plaintiff's argument that the plain text of the PCA excludes the Marines and finds that the PCA may be applicable to them. This holding conforms to the history of the PCA and its purpose of preventing "any military instruction into civilian affairs." *See Laird v. Tatum*, 408 U.S. 1, 15 (1972).

**b. The Marines' Conduct Here is Authorized by the 2016 NDAA.**

The Government next argues that, even if the PCA could apply to the Marines, it does not here because the National Defense Authorization Act ("NDAA") for Fiscal Year 2016, Pub. L. No. 114-92, § 1059, 129 Stat. 726, 786–87 (2015) ("§ 1059"), "authorize[s]

by law" the Marine Corps' conduct on the United States' southern border with Mexico.[1] 10 U.S.C. § 275. Defendant contends, however, that the government's "analysis is wrong," because the NDAA's legal effect lapsed with fiscal year 2016 and thus could not authorize Defendant's 2019 arrest. (*Rios*, ECF No. 39.)[2] Thus, to resolve the Parties' dispute, the Court must interpret the 2016 NDAA.

The "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil*, 519 U.S. 337, 340 (1997). This often requires "examin[ing] not only the specific provision at issue, but also the structure of the statute as a whole, including its object and policy." *Children's Hosp. & Health Ctr. v. Belshe*, 188 F.3d 1090, 1096 (9th Cir. 1999); *Robinson*, 519 U.S. at 340 ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole"). If the plain meaning of the statute is unambiguous, that meaning controls. However, if the statutory language is ambiguous, then a court may consult legislative history. *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999).

Here, the Court finds that the 2016 NDAA remains unambiguously in effect. The initial text of § 1059(a) provides an unrestrained grant of authority. *See* § 1059(a), 129 Stat. at 726, 986 ("Authority to Provide Assistance.— The Secretary of Defense may

---

[1] Pursuant to the 2016 NDAA, the "Secretary of Defense may provide assistance to United States Customs and Border Protection for purposes of increasing ongoing efforts to secure the southern land border of the United States," § 1059(a), including through the deployment of members of the Armed Forces, the deployment of manned aircraft and surveillance system, the use of intelligence analysis support, and the provision of "such materiel and equipment and logistics support as is necessary to ensure the effectiveness of assistance provided under subsection (a)." § 1059(c)–(d). "Of the amounts authorized to be appropriated for the Department of Defense by this Act, the Secretary of Defense may use up to $75,000,000 to provide assistance under subsection (a)." § 1059(e).

[2] All references to Docket numbers are drawn from the Docket in *United States v. Bruno Rios-Montano* (Case No. 19-CR-2123-GPC), unless otherwise stated.

4

provide assistance to United States Customs and Border Protection for purposes of increasing ongoing efforts to secure the southern land border of the United States."). Congress conferred that grant under a section named, "Department of Defense Authority to Provide Assistance to Secure the Southern Land Border of the United States," and in an Act entitled, the "National Defense Authorization Act." *See Yates v. United States*, 135 S. Ct. 1074, 1083 (2015) (noting that headings "are not commanding" but may "supply cues" as to Congress's intention); *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) (quotation omitted) ("the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute").

Section 1059, moreover, contains no sunset provision and the Court cannot infer one now. *See Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 562 (9th Cir. 2016) (quoting *United States v. Great N. Ry. Co.*, 343 U.S. 562, 575 (1952)) ("[i]t is our judicial function to apply statutes on the basis of what Congress has written, not what Congress might have written"); *Ebert v. Poston*, 266 U.S. 548, 554 (1925) ("The judicial function to be exercised in construing a statute is limited to ascertaining the intention of the Legislature therein expressed. A *casus omissus* does not justify judicial legislation."). To the contrary, because other provisions of the 2016 NDAA include express dates of termination, *see, e.g.*, § 218, 129 Stat. at 726, 773 (containing an express "[t]ermination" clause); § 1056(e), 129 Stat. at 726, 985 (same); § 2803, 129 Stat. at 726, 1169 (same), it appears Congress deliberately chose *not* to include one here. *See Dep't of Homeland Sec. v. MacLean*, 135 S. Ct. 913, 919 (2015) ("Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another"). The Court finds it unsurprising, moreover, that the 2016 NDAA contains a broad scope of legislation, including lasting provisions such as § 1059, given the considerable debate preceding its passage, *see* Julie Hirschfeld Davis, *In Wielding Rarely Used Veto, President Obama Puts Budget Heat on Republicans*, N.Y. TIMES (October 22, 2015),

5

https://www.nytimes.com/2015/10/23/us/politics/obama-vetoes-defense-bill-deepening-budget-fight-with-gop.html, and the breadth of legislation included in NDAAs today. *See, e.g.*, National Defense Authorization Act for Fiscal Year 2020, S. 1790 at 1107–18 (granting up to 12 weeks of paid parental leave for federal civilian employees through the Federal Employee Paid Leave Act).

Defendant's contention that § 1059 must be read with a "very strong presumption" that it elapsed in fiscal year 2016 is misplaced. (ECF No. 39 at 1–4.) Yes, § 1059 includes a specific appropriation of $75,000,000 to effectuate the proposed assistance. *See* § 1059(e), 129 Stat. at 726, 987 ("Of the amounts authorized to be appropriated for the Department of Defense by this Act, the Secretary of Defense may use up to $75,000,000 to provide assistance under subsection (a)"). And, it is also true that an "appropriation of funds is generally not permanent or available continuously without an express provision." *See Tin Cup, LLC v. United States Army Corps of Engineers*, 904 F.3d 1068, 1073 (9th Cir. 2018) (citing 31 U.S.C. § 1301(c)). However, the mere proximity or inclusion of § 1059(e) does not mean the entire provision is controlled by a "very strong presumption" that it should be applicable "only for the fiscal year for which the bill was passed." *Id.*; (*Rios*, ECF No. 48 at 2.)

The NDAA, moreover, is not "meaningfully" an appropriations bill under *Tin Cup* just because it appropriates money. (ECF No. 47 at 6.) On the one hand, the "NDAA is enacted each fiscal year to specify the budget needs for the Department of Defense." *Utah Shared Access All. v. Carpenter*, 463 F.3d 1125, 1131 (10th Cir. 2006). On the other hand, Congress has also made substantive changes to the law and enacted new, longstanding programs through other NDAAs. *See, e.g.*, 31 C.F.R. § 561.203 (providing for the imposition of sanctions on "a foreign financial institution" that "has knowingly conducted or facilitated any significant financial transaction with the Central Bank of Iran or a designated Iranian financial institution, consistent with section 1245 of the National

6

Defense Authorization Act for Fiscal Year 2012"); *see also*, *e.g.*, *Nat'l Coal. for Men v. Selective Serv. Sys.*, 355 F. Supp. 3d 568, 579 (S.D. Tex. 2019) (describing a commission created by the 2017 NDAA to "consider whether Congress should modify or abolish the current draft registration requirements"); *Pride Indus., Inc. v. Comm. for Purchase From People Who Are Blind or Severely Disabled*, No. 2:19-CV-01620-KJM, 2019 WL 5569113, at *2 (E.D. Cal. Oct. 29, 2019) (describing a panel created by the 2017 NDAA intended to "explore opportunities for competition among qualified nonprofit agencies or central nonprofit agencies" for government contracts); *Kumar v. Republic of Sudan*, No. 2:10-CV-171, 2011 WL 4369122, at *3 (E.D. Va. Sept. 19, 2011) (noting that the 2008 NDAA "create[d] a new cause of action against state sponsors of terrorism"). Thus, to assume that § 1059 would not endure beyond the fiscal year in which the Act was passed merely because it contains an appropriations provision would be inconsistent with the treatment of other, recent NDAAs.

In addition, looking to the 2016 NDAA's "prefatory clause" as Defendant urges does not persuade the Court otherwise. (ECF No. 47 at 6.) Here, the preamble or prefatory clause states that the 2016 NDAA is an Act to "authorize appropriations for fiscal year 2016 for military activities of the Department of Defense, for military construction, and for defense activities of the Department of Energy, to prescribe military personnel strengths for such fiscal year, and for other purposes." 2016 NDAA, 129 Stat. 726, 726. Hence, there is some sense to thinking that the "operative clause," i.e. § 1059, is more "consistent with the [Act's] announced purpose" if treated as an appropriations bill. *D.C. v. Heller*, 554 U.S. 570, 578 (2008). However, it is not "unusual . . . for the [operative clause of an Act] to go beyond the preamble; the remedy often extends beyond the particular act or mischief which first suggested the necessity of the law." *Id.* (quotation omitted). And, here, it would be difficult to determine the scope of any operative clause by looking to the preamble since the preamble itself expressly provides

for "other purposes." 2016 NDAA, 129 Stat. 726, 726.

Defendant also argues that the Court should treat the 2016 NDAA as having lapsed because the Fourth Circuit treated a prior NDAA as having done so in *United States v. Al-Talib*, 55 F.3d 923, 930 (4th Cir. 1995). (*Rios*, ECF No. 48 at 2–3.) There, the Fourth Circuit noted that the Drug Enforcement Agency's use of a military aircraft in a sting operation had been authorized by § 1004 of the 1991 NDAA and that § 1004 "was extended through fiscal year 1994 in additional appropriations." *Al-Talib*, 55 F.3d at 930. However, as the Government points out, the text of § 1004 expressly limited that provision to remain in effect for one year. (*Rios*, ECF No. 49 at 4); *see* National Defense Authorization Act for Fiscal Year 1991, PL 101–510, 104 Stat 1485 ("During fiscal year 1991, the Secretary of Defense may provide support for the counter-drug activities of any other department or agency of the Federal Government . . ."). That renders the NDAA provision discussed in *Al-Talid* distinguishable from § 1059 of the 2016 NDAA. This textual difference between the two provisions also highlights that, had Congress been seeking to limit § 1059 to fiscal year 2016, it could have done so expressly. Congress, in fact, did so with several other provisions in the 2016 NDAA. *See, e.g.*, § 514, 129 Stat. 726, 810 (using the phrase "[d]uring fiscal year 2016); § 129 Stat. 726, 810 (same).

Given the preceding analysis of § 1059's text and context, the Court finds no ambiguity as to the provision's duration: it remains in effect. The Court thus pauses here only to address one brief point of legislative history discussed by the parties. Here, the Government argued that an amendment put forth by 180 Members of Congress seeking to repeal the deployment authorization provided for under § 1059 was indicative of that fact that the authorization remained in effect. (*Rios*, ECF No. 45 at 3–4) (citing Cong. Rec. H5722). However, as Defendant has pointed out, (*Rios*, ECF No. 47 at 3), such post-enactment legislative history is "an unreliable guide to legislative intent." *See Chapman v. United States*, 500 U.S. 453, 464 n.4 (1991); *see also Fair Hous. Council of San*

*Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216, 1223 (9th Cir. 2012) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 632 (1990) (Scalia, J., concurring) ("Arguments based on subsequent legislative history . . . should not be taken seriously, not even in a footnote.") Consequently, the Court draws no inferences from the proposed amendment.

For the foregoing reasons, the Court finds that § 1059 of the 2016 NDAA did not lapse with the close of fiscal year 2016.[3] Having found the 2016 NDAA remains in effect, the Court does not address whether, in the absence of that authority, (1) the Marine Corps' involvement with Law Enforcement at the United States' southern border with Mexico constitutes a "systematic" violation of the PCA or (2) such a violation merits suppression or dismissal. *See Dreyer*, 804 F.3d at 1279.

## III. Conclusion

For the foregoing reasons, Defendant's motion to suppress evidence based on the alleged violation of the Posse Comitatus Act is **DENIED**.

IT IS SO ORDERED.

Dated: February 7, 2020

Hon. Gonzalo P. Curiel
United States District Judge

---

[3] The Court also rejects Defendant's argument that the Government's grant of authority is revoked with the depletion of any funding conferred by § 1059(e). As the Government notes, the statute's text seems to treat $75 million as a limitation on the funds to be drawn "by this Act" (i.e., by the 2016 NDAA) and thus does not "limit what DoD may use from other sources, including future appropriations." (ECF No. 49 at 2.)

9