ROBERT S. BREWER, JR.
United States Attorney
ANDREW SHERWOOD
Assistant U.S. Attorney
Oregon Bar No. 126338
New York Bar No. 4833166
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-9690
Email: andrew.sherwood@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRUNO RIOS-MONTANO,<br><br>Defendant. | Case No.: 19-cr-02123-GPC<br><br>UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION AT ECF NO. 80. |

Defendant's motion be denied for all the reasons already provided in the United States' previous response, ECF No. 71. Again, Defendant's analysis of § 1325(a)(1) is fatally flawed because it relies entirely on legislative history from the 1920s, decades before § 1325(a)(1) was enacted.

Additionally, it's clear from the legislative history of the Immigration Act of 1990, that it was passed without any racist motives and in fact, was designed to improve legal immigration to the United States. As such, Defendant's motion should be denied.

**I.     The Immigration Act of 1990 was passed without any discriminatory intent.**

The Immigration Act of 1990 was supported by the following organizations:

- National Council of La Raza. Mexican American Legal Defense and Education Fund
- Organization of Chinese Americans
- Japanese American Citizens League
- Irish Immigration Reform Movement
- American Civil Liberties Union
- American Jewish Committee
- U.S. Catholic Conference
- Lutheran Immigration and Refugee Service
- American Bar Association
- American Immigration Lawyers Association
- U.S. Chamber of Commerce
- National Association of Manufacturers
- National Foreign Trade Council
- Industrial Biotechnology Association
- Semiconductoir Industry Association
- American Council for International Personnel
- AFL-CIO
- International Ladies Garment Workers Union

*Cong. Rec.* 136: 25, p. H12367.

This broad organizational support demonstrates the Immigration Act of 1990 is not tethered to or tainted by racist comments made by representatives in 1929 when a separate and different law was passed. Many of the above groups' objectives are to reduce discrimination, promote civil liberties and protect the rights of immigrants.

Further, the comments made by several representatives extolling the virtues of the bill shows that there was no racial discrimination involved in its passage. Representative Fish (NY) stated "The country thrives on the new blood and vitality brought by immigrants. I believe that the conference report continues America's longstanding commitment to immigration." *Cong. Rec.* 136: 25, p. H36846. Representative Schmuer (NY) provided "The bill says that immigrants are good for America as they have been for 200 years, adding their vitality their skills, their energy, and their plain desire to be Americans and be free and participate in our system to our wealth and to our strength."

*Cong. Rec.* 136: 25, p. H12361. Representative Schumer went on to state that "Every study has shown that areas of our country that have many immigrants are vital and strong and important." *Cong. Rec.* 136: 25, p. H12361. Representative Moakley (MA) stated that "this bill creates greater opportunity for all people. It contributes to the overall growth of our country. It provides fairer immigration standards for nationals from countries like Ireland and Poland. It provides a mechanism to offer safe haven to refugees who flee war. It is a good bill that deserves bipartisan support." *Cong. Rec.* 136: 25, p. H12364. These statements prove that the Immigration Act of 1990 was not passed with any discriminatory intent and is in no way tainted by the separate law passed in 1929.

## II. The taint of prior discriminatory intent does not forever prevent the criminalization of illegal entry.

There is no evidence whatsoever that the Immigration Act of 1990 was passed with any discriminatory intent. As shown above, it's quite the opposite. Whether representatives referenced the attempt provision or not, it's clear from the statements about the bill as a whole, that there is no discriminatory intent behind it.

Again, Defendant relies exclusively on *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 (1977). Under Defendant's view, the taint of prior discriminatory intent forever prevents the criminalization of illegal entry. As explained in the United States' response, ECF No. 71, this makes little sense. Whether intentional discrimination existed in 1929 legislation is a question about the motives of the 1929 legislature. Legislative intent is not an artifact that "carr [ies] over" from one law to the next; it must be decided anew with each successive enactment. *See, e.g., Mobile v. Bolden*, 446 U.S. 55, 74 (1980) (plurality opinion) (inquiring "whether a discriminatory intent has been proved" as to the particular enactment at issue, because "past discrimination cannot . . . condemn governmental action that is not itself unlawful"); *cf. Palmer v. Thompson*, 403 U.S. 217, 225 (1971) (contemplating that a law invalidated because of improper motive might "be valid" if the legislature "repassed it for different reasons").

Defendant again cites to *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020) and *Espinoza v. Montana Dep't of Revenue*, 140 S. Ct. 2246 (2020). The United States relies on our previous response, ECF 71, as it relates to those cases. As the United States explained, neither *Ramos* nor *Espinoza* stands for the proposition Defendant claims—that "not only do courts examine the racial motivations of a law at the time of its passage, later reenactments do not cleanse the law of its original taint." ECF No. 70 at 20.

Several courts of appeals have recognized that, when a State reenacts a particular voting provision that was intentionally discriminatory when first enacted, the ultimate focus in any subsequent litigation must be the intent of the reenacting legislature, not the original one. *See Hayden v. Patterson*, 594 F.3d 150, 166-167 (2d Cir. 2010) (addressing felon-disenfranchisement law); *Johnson v. Governor*, 405 F.3d 1214, 1223-1224 (11th Cir.) (en banc) (same); *Cotton v. Fordice*, 157 F.3d 388, 391-392 & n.7 (5th Cir. 1998) (same); *Chen v. City of Houston*, 206 F.3d 502, 520-521 (5th Cir. 2000) (addressing racial-gerrymandering claim). Those courts also have rejected the proposition that prior intent "remains legally operative" unless and until some affirmative contrary showing is made. *Johnson*, 405 F.3d at 1223; *see Hayden*, 594 F.3d at 166-167; *accord Cotton*, 157 F.3d at 392 (reaffirming that plaintiff was required to show that the "*current* version" of the law was "adopted out of a desire to discriminate") (emphasis added).

### III. Attempted Entry was enacted in the Immigration Act of 1990 and has no connection to the 1929 legislation.

The United States again relies on our previous filed response, ECF No. 71. Attempted Entry is a separate crime that was enacted 61 years after the 1929 law. Additionally, the "governing statutory framework" of United States' immigration law comes from 1952, when Congress replaced prior disparate statutes with the comprehensive INA. *See* Pub. L. No. 82-414, 66 Stat. 163 (codified as amended at 8 U.S.C. § 1 et seq.); *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 756 (9th Cir. 2018). Defendant cannot escape the fact that the crime he is charged with—attempted entry—was not even a crime

until 1990. Or that 8 U.S.C. § 1325 has been updated or modified several additional times by Congress—including in 1986, 1991, and 1996.

There is no connection between statements made by representatives in 1929 to the law passed in 1990. It is a separate crime and Defendant's *Arlington Heights* analysis is flawed for the reasons explained in this response and the United States prior response. *Id.*

**CONCLUSION**

There is no connection between comments made by representatives in 1929 and a separate and distinct law that was passed in 1990. Defendant's motion should be denied.

DATED: November 25, 2020   Respectfully submitted,

Robert S. Brewer, Jr.
United States Attorney

*/s/ Andrew Sherwood*
Andrew Sherwood
Assistant U.S. Attorney